# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ABDUL RAHIM ABDUL RAZAK AL JANKO, )
                        )

       **Plaintiff,**         )

                        )

         **v.**            )   **Civil Case No. 10-1702 (RJL)**

                        )

**ROBERT M. GATES,**          )

**DONALD RUMSFELD,**       )

**PAUL WOLFOWITZ,**        )

**GORDON ENGLAND,**      )

**REAR ADM. JAMES M. McGARRAH,** )

**RICHARD B. MYERS,**        )

**PETER PACE,**             )

**MICHAEL GLENN "MIKE" MULLEN,** )

**GARY SPEER,**             )

**JAMES T. HILL,**           )

**BANTZ CRADDOCK,**        )

**JAMES G. STAVRIDIS,**      )

**MAJ. GEN. GEOFFREY D. MILLER,**  )

**BRIG. GEN. JAY HOOD,**      )

**REAR ADM. HARRY B. HARRIS, JR.,**  )

**MARK H. BUZBY,**         )
                        )

DAVID THOMAS, )
)
THOMAS H. COPEMAN III, )
)
ADOLPH MCQUEEN, )
)
BRIG. GEN. NELSON J. CANNON, )
)
COL. MICHAEL BUMGARNER, )
)
COL. WADE DENNIS, )
)
ESTEBAN RODRIGUEZ, )
)
PAUL RESTER, )
)
DANIEL MCNEILL, )
)
FRANK WIERCINSKI, )
)
DOES 1-100 )
)
          Defendants. )

## MEMORANDUM OPINION

December 22, 2011 [Dkt. ## 13, 14]

Plaintiff Abdul Rahim Abdul Razak Al Janko ("plaintiff") is a Syrian national who

was detained in Afghanistan by U.S. military forces in January 2002 and held in

Guantánamo Bay, Cuba, from May 2002 until October 2009.   First Amended Complaint

("FAC") ¶¶ 11, 38, April 29, 2011 [Dkt. #11].   On June 22, 2009, after determining that

the Government failed to establish plaintiff's lawful detention as an enemy combatant, I

granted plaintiff's petition for a writ of habeas corpus and ordered his release.   *See Al*

*Ginco v. Obama*,[1] 626 F. Supp. 2d 123 (D.D.C. 2009), *final judgment* 634 F. Supp. 2d 109 (D.D.C. July 17, 2009). Ultimately, plaintiff was released from Guantánamo Bay on October 7, 2009. FAC ¶ 38.

On October 5, 2010, plaintiff filed a Complaint seeking damages against 26 individual defendants, 100 unnamed "Jane" and "John Doe" defendants, and the United States, alleging that he was subjected to abusive treatment while detained by the U.S. military both in Afghanistan and at Guantánamo. Indeed he is the first detainee who was released pursuant to a successful habeas petition to seek damages for the acts he says occurred while in U.S. custody.[2] In particular, he alleges three constitutional violations and four violations of the Alien Tort Statute, 28 U.S.C. § 1350, Compl. Oct. 5, 2010 ¶¶ 99-154 [Dkt. #1], and seeks compensatory, punitive, and exemplary damages in addition

---

[1]    As I explained in my June 22, 2009 Opinion, plaintiff now prefers the surname "Al Janko." *Al Ginco*, 626 F. Supp. 2d at 124.

[2]    Here, unlike in a handful of legally similar cases decided by other judges on our Court, the alien who was previously designated an "enemy combatant" applied for, and was granted, a writ of habeas corpus. *Compare Al Ginco v. Obama*, 626 F. Supp. 2d 123, 130 (D.D.C. 2009) (granting petitioner's writ of habeas corpus, even after a Combatant Status Review Tribunal ("CSRT") determined that petitioner was an "enemy combatant") *with In re Pet'rs Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantánamo Bay*, 700 F. Supp. 2d 119, 136-37 (D.D.C. 2010) (Hogan, J.) (dismissing as moot habeas petitions of plaintiffs who had been determined by CSRTs to be "enemy combatants," but who were later released from Guantánamo) *and Al-Zahrani v. Rumsfeld*, 684 F. Supp. 2d 103, 110 (D.D.C. 2010) (Huvelle, J.) (claims jurisdictionally barred for survivors of aliens detained at Guantánamo who were determined by CSRTs to be "enemy combatants" but who died while in custody). Thus, although the case law controlling whether this Court had jurisdiction over *any* of the aforementioned plaintiffs' claims (the Court jurisdiction over none) is essentially the same for *this* plaintiff, the set

to attorney's fees, *id.* at 39. Through his April 29, 2011, Amended Complaint, plaintiff added individual defendants; removed eight individual defendants; removed one Alien Tort Statute claim; added one constitutional claim; added nine Foreign Tort Claims Act allegations under 28 U.S.C. § 2675(a); and added one conspiracy claim under 42 U.S.C. § 1985.[3] *See generally* FAC; *see also* Defendant United States' Motion to Dismiss Counts Five Through Seventeen, ("Gov't Mot. to Dismiss") at 2, June 29, 2011 [Dkt. #13].

Now before the Court are two motions to dismiss: Defendant United States' Motion to Dismiss Counts Five Through Seventeen ("Gov't Mot. to Dismiss"), June 29, 2011 [Dkt. #13], and Individual Defendants' Motion to Dismiss Counts One Through Four and Count Eighteen, ("Indiv. Defs.' Mot. to Dismiss"), June 29, 2011 [Dkt. #14]. Upon review of the pleadings, the entire record, and the applicable law, the Court GRANTS the United States' Motion to Dismiss Counts Five Through Seventeen [Dkt. #13]. The Court also GRANTS the Individual Defendants' Motion to Dismiss Counts One Through Four and Count Eighteen [Dkt. #14].

---

of facts in this case is, to say the least, quite different.

3    In sum, Counts I-IV allege constitutional violations; Counts V-VII allege violations of the Alien Tort Statute; Counts VIII-XVII allege violations of the Federal Tort Claims Act; and Count XVIII alleges conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985. FAC ¶¶ 136-287.

# BACKGROUND

## I.    Procedural History

The facts of this case are well known and largely undisputed.   As I recounted in my June 22, 2009 Opinion, plaintiff is a Syrian citizen who spent his teen years in the United Arab Emirates.   *Al Ginco*, 626 F. Supp. 2d at 125; *see also* FAC ¶ 51.   Around January 2000, he traveled to, and began living in, Afghanistan.   FAC ¶¶ 53-55.   After a brief stay at a Taliban guesthouse he attended the al Farouq training camp only to be accused by certain al Qaeda leaders of being a U.S. spy.   *Al Ginco*, 626 F. Supp. 2d at 127-28.   Ultimately he was tortured so severely by al Qaeda that he gave a false "confession" that he was, indeed, a U.S. spy.[4]   *Id.* at 127.   Thereafter, he was imprisoned by the Taliban for over eighteen months at the infamous Sarpusa prison in Kandahar.[5]   *Id.; see also* FAC ¶¶ 2, 56, 58-61.   In January 2002, when U.S. forces learned of plaintiff's presence at the prison – which was by then abandoned – they took him into custody and questioned him at Kandahar Air Base.   *Al Ginco*, 626 F. Supp. 2d at 125, 127; *see also* FAC ¶ 63.   At the time, the Government "mistook [Al] Janko as one

---

[4]    As I explained in 2009, "Although a detailed description of the various torture methods the petitioner was subjected to by al Qaeda is beyond the scope of this opinion, it would be fair to say that if his account is true even in part, al Qaeda's conduct would be fairly characterized as barbaric." *Al Ginco*, 626 F. Supp. 2d at 128, n.5.

[5]    It is beyond dispute that "the conditions in the Sarpusa prison were so terrible – if not horrific – that many prisoners died while incarcerated.   Prisoners were fed next to nothing, and the prison was overcrowded, unsanitary, and lacked sufficient medical care." *Al Ginco*, 626 F. Supp. 2d at 127, n.3.

of a number of suicide martyrs based on videotapes captured at an al Qaeda safehouse."

*Al Ginco*, 626 F. Supp. 2d at 128, n.4; *see also* FAC ¶¶ 4, 64. Not yet aware that "the

tape involving [Al] Janko . . . was actually an Al Qaeda torture tape," U.S. forces

transported plaintiff to Guantánamo Bay, Cuba. *Al Ginco*, 626 F. Supp. 2d at 125, 128,

n.4; *see also* FAC ¶ 69.

During his time at Guantánamo, plaintiff's detention status was twice reviewed by

Combatant Status Review Tribunals ("CSRTs"). On October 27, 2004, the first of two

different CSRT panels determined that plaintiff was an enemy combatant. *See* FAC ¶

94. That CSRT panel relied upon evidence such as the taped confession the Government

later learned was coerced. *See id.* An Administrative Review Board ("ARB") later

affirmed plaintiff's status as an enemy combatant and continued his detention on October

24, 2005. *See id.* ¶ 95. Relying upon much of the same evidence, a second CSRT panel

again determined in 2008 that plaintiff was properly detained as an enemy combatant.

*Id.* ¶ 96.

Ultimately, however, in the aftermath of the Supreme Court's decision in *Rasul v.*

*Bush*, 542 U.S. 466, 483 (2004) (holding that 28 U.S.C. § 2241 extends statutory habeas

corpus jurisdiction to detainees in Guantánamo Bay), plaintiff filed a petition for writ of

habeas corpus with this Court on June 30, 2005. *Al Ginco*, 626 F. Supp. 2d at 125; *see*

*also* FAC ¶ 99. No action was taken on the petition until after the Supreme Court ruled

on June 12, 2008, in *Boumediene v. Bush*, 553 U.S. 723, 771 (2008), that Guantánamo

detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention."

Shortly after *Boumediene*, I issued a Case Management Order ("CMO") on August 27, 2008 for the handling of the 26 habeas petitions on my docket. After a protracted series of procedural issues, described more fully in my earlier Opinion, I commenced the habeas corpus proceedings for petitioner Al Janko on May 28, 2009. On June 22, 2009, I granted his petition and ordered his release, finding that "the limited and brief nature of [Al] Janko's relationship with al Qaeda (and/or the Taliban) . . . was sufficiently vitiated" by his intervening mistreatment and imprisonment by al Qaeda and the Taliban such that "he was no longer 'part of' al Qaeda (or the Taliban) at the time he was taken into custody by U.S. forces in 2002," and, as a result, the Government "failed to establish by a preponderance of the evidence that [Al] Janko was lawfully detainable as an enemy combatant . . . at the time he was taken into custody." *Al Ginco*, 626 F. Supp. 2d at 130. Final judgment was entered in the case on July 17, 2009. The United States did not appeal the ruling, and the plaintiff was finally released from Guantánamo on October 7, 2009. FAC ¶¶ 99-100.

## II.    First Amended Complaint

Plaintiff now brings suit against the United States, 20 current and former high-ranking civilian and military officials,[6] and 100 Jane and John Does, FAC ¶¶ 13-35

---

6       As explained below in Section III.B.1, the Government properly substituted the

– "the individual officers, military commanders, and policymakers" allegedly

"responsible for [p]laintiff's wrongful detention, and for the conditions inflicted on him"

– seeking money damages for the constitutional and statutory violations he allegedly

suffered during his detentions in Afghanistan[7] and Guantánamo.[8]   Pl.'s Opp'n to Indiv.

---

United States as the sole defendant for plaintiff's Alien Tort Statute claims in Counts V-VII.

[7]     According to the Government, however, "[i]t is unclear to what extent Counts One through Four and Count Eighteen address the 'abusive techniques' alleged to have occurred in *Afghanistan*."   Indiv. Defs.' Mot. to Dismiss at 3, n.3 (emphasis added). Indeed, plaintiff focuses his allegations on Guantánamo in these Counts.   *See id.* (noting specific references to Guantánamo in the FAC).

[8]     With respect to plaintiff's allegations against individual defendants: in Counts I, II, IV (against defendants Gates, Rumsfeld, Wolfowitz, England, McGarrah, Miller, Hood, Harris, Buzby, Thomas, Copeman, McQueen, Cannon, Bumgarner, Dennis, Rodriguez, and Rester), plaintiff alleges that his detention and conditions of confinement violated his Fourth and Fifth Amendment rights, and that the CSRT violated his Fifth Amendment right to due process.   FAC ¶¶ 136-49, ¶¶ 154-61.   In Count III (against defendants Ashcroft and Mueller), plaintiff alleges denial of a "name-clearing hearing" in violation of his Fifth Amendment right to due process.   FAC ¶¶ 150-53.   In Count XVIII, plaintiff alleges (among other things) that the individual defendants conspired to abuse and detain him in violation of his Fourth, Fifth, and Thirteenth Amendment rights, and in violation of 42 U.S.C. § 1985(2)-(3).   FAC ¶¶ 283-287; *see also* Indiv. Defs.' Mot. to Dismiss at 1.
        Plaintiff also alleges multiple violations of the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, which were later converted, by substitution, into claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* In Count V, for example, plaintiff alleges violation of his right to be free from prolonged, arbitrary detention; in Count VI, violation of his right to be free from torture and cruel, inhuman, or degrading treatment; and in Count VII, violation of his rights under the Third and Fourth Geneva Conventions.   *See* FAC ¶¶ 162-84.   He also brings nine state tort claims against the United States under the FTCA, including allegations of negligent failure to protect from harm (Count VIII); negligent failure to provide adequate medical care (Count IX); cruel, inhuman or degrading treatment (Count X); intentional infliction of emotional distress (Count XI); negligent infliction of emotional distress (Count XII); false

8

Defs.' Mot. to Dismiss ("Pl.'s Opp'n to Indiv. Defs."), Aug. 29, 2011, at 5 [Dkt. #17].

To be sure, plaintiff does *not* allege that any specific, identifiable defendant personally mistreated him. *See* Indiv. Defs.' Mot. to Dismiss at 4. Nevertheless, he alleges that while he was detained and believed to be an enemy combatant, U.S. forces used "abusive interrogation techniques" against him, such as "striking his forehead; threatening to remove his fingernails; sleep deprivation; exposure to very cold temperatures; . . . humiliation; . . . and rough treatment," FAC ¶¶ 66-67.[9] He claims that unidentified U.S. forces urinated upon him when he first arrived in Guantánamo, FAC ¶ 71; tied, shackled, and force-fed him, *id.* ¶ 72; stepped on plaintiff's Koran, *id.* ¶ 81; subjected him to solitary confinement, resulting in "extreme sleep deprivation," *id.* ¶ 73; deprived him of

___

arrest and false imprisonment (Count XIII); assault (Count XIV); battery (Count XV); prolonged, arbitrary detention (Count XVI); and negligent supervision and hiring (Count XVII). *See* FAC ¶¶ 185-282; *see also* Gov't Mot. to Dismiss at 1.

9    It is important to note that where plaintiff references "torture," he either: 1) alleges that the *Taliban or Al Qaeda* tortured him prior to being held in U.S. custody, *see, e.g.*, FAC ¶¶ 2, 49, 56, 58, 62, 68, 71, 90, 91, 94, 95, 97, 98, 236, 256; or he 2) alleges or references torture in the abstract, *see, e.g.*, FAC ¶¶ 36, 135, 171, 178. To the extent he directs allegations at the United States or at U.S. personnel, he does *not* claim that any known person participated in his alleged torture. *See, e.g.*, FAC ¶¶ 1 ("[t]he United States Government subjected Plaintiff to . . . torture"); 14, 18, 106, 123, 124, 127, 129, 172 (individual defendants' alleged approval, knowledge, or implementation of torture or acts "tantamount to torture"); 33-35 (alleged U.S. citizens' (Jane/John Does') participation in torture). Of course, the fact that plaintiff does not allege such conduct by any known U.S. citizen only underscores the U.S. policy against such conduct. As the Government's brief makes very clear: "Torture is flatly illegal. Defendants abhor it, and the government has repudiated it in the strongest terms." Indiv. Defs.' Mot. to Dismiss at 4 (citing 18 U.S.C. § 2340A; Exec. Order No. 13491, § 3(a), 74 Fed. Reg. 4894 (Jan. 22, 2009)).

adequate medical and psychological care, *id.* ¶ 74; and inflicted "severe beatings and threats against himself and his family," *id.* ¶ 75. Plaintiff claims that as a result of these and other allegations of mistreatment, he attempted suicide seventeen times. *Id.* ¶ 78. He now seeks damages for the physical and psychological injuries he allegedly suffered.

## ANALYSIS

### I. Standard of Review

The jurisdiction of federal courts is, of course, limited. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Accordingly, "it is the duty of this court to dismiss whenever it becomes apparent that [this court] lack[s] jurisdiction." *Green v. Dep't of Commerce*, 618 F.2d 836, 839 (D.C. Cir. 1980).

When facing a Rule 12(b)(1) motion to dismiss, plaintiff bears the burden of demonstrating that jurisdiction exists. *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). The Court, in turn, "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Logan v. Dep't of Veteran. Affairs,* 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (quoting *Fitts v. Fed. Nat'l Mortg. Ass'n,* 44 F. Supp. 2d 317, 321 (D.D.C. 1999)). Even so, a court "may give the plaintiff's factual allegations closer scrutiny and may consider materials outside the pleadings" when evaluating its ability to hear a claim. *Logan,* 357 F. Supp. 2d at 153

(citing Fed. R. Civ. P. 12(b)(1)); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (Urbina, J.). A defendant's motion to dismiss for lack of subject matter jurisdiction should only be granted, however, when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation and citation omitted); *see also* Pl.'s Opp'n to Indiv. Defs. at 8.

## II.    Individual Defendants (Counts I-IV and XVIII)

The resolution of this case turns on the answer to one question: whether the jurisdiction stripping provision in § 7 of the MCA applies to damages claims by aliens who have been released from Guantánamo pursuant to a successful habeas petition. Unfortunately for the plaintiff, the answer is yes and, as such, the defendants' motion must be GRANTED.

### A.    This Court Lacks Jurisdiction to Hear Plaintiff's Claims Against the Individual Defendants.

The Congress has spoken with particular clarity on the matter now before this Court. Indeed, the Congress stripped this Court of jurisdiction to hear *any* of plaintiff's allegations, all eighteen of which are barred under Section 7 of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, 2635 (codified at 28 U.S.C. § 2241(e)) ("MCA"). Under 28 U.S.C. § 2241(e)(2):

> [N]o court, justice, or judge shall have jurisdiction to hear or

11

consider any other action against the United States or its agents relating to *any aspect* of the detention, . . . treatment, . . . or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination (emphasis added).

Thus, on its face, the MCA prohibits this – and any other – Court from hearing cases such as plaintiff's, which involves an alien "detained by the United States," *see* FAC ¶¶ 11, 63-89, and which plainly relates to aspects of his "detention [and] treatment" while he was in U.S. custody in Afghanistan and Guantánamo, *see id.* ¶¶ 136-287.

Undaunted by what appears to be a clear statutory bar, plaintiff argues that MCA § 7 does not, in fact, bar his claims. Plaintiff's main contention is that his suit falls outside the scope of the MCA because he was neither "properly detained as an enemy combatant" nor "awaiting such determination." 28 U.S.C. § 2241(e)(2); *see also* Pl.'s Opp'n to Indiv. Defs. at 9-13. Not so! Plaintiff's argument that he was not "determined by the United States to have been properly detained as an enemy combatant" is clearly mistaken. The term "United States" in § 2241(e)(2) refers to the Executive Branch, not the Judicial Branch. Indeed, Judge Hogan of our Court reached that very conclusion just last year in *In re Pet'rs Seeking Habeas Corpus Relief in Relation to Prior Detentions at Guantánamo Bay*, 700 F. Supp. 2d 119, 136-37 (D.D.C. 2010) (Hogan, J.). Thus, the determinations of two separate CSRTs – one in 2004, and another in 2008, both of which determined that plaintiff was an enemy combatant – more than satisfy the statutory

requirements of 28 U.S.C. § 2241(e)(2).[10]  *See* Indiv. Defs.' Mot. to Dismiss at 6; *see also* FAC ¶¶ 94-96.

And, notwithstanding plaintiff's arguments to the contrary, my subsequent grant of habeas relief neither eliminates the MCA's jurisdictional bar to plaintiff's detention-related claims, nor confers jurisdiction over his non-habeas claims.  Indiv. Defs.' Mot. to Dismiss at 6.  *But see* Pl.'s Opp'n to Indiv. Defs. at 10 (arguing that "[w]hen this Court granted [p]laintiff's writ of habeas corpus, it affirmed that [p]laintiff was clearly not part of the Taliban or Al Qaeda when he was detained, and he thus was not 'lawfully' detained").  Indeed, a number of my colleagues on this Court have examined this very legal issue in somewhat similar factual settings and still determined that

> The plain language of the statute precludes jurisdiction over claims by aliens who "ha[ve] been determined" to be enemy combatants by the United States. 28 U.S.C. § 2241(e)(2). Nothing in the statute qualifies the necessary determination or suggests that it must be conducted in a particular way.

*Al-Zahrani*, 684 F. Supp. 2d at 110 (D.D.C. 2010) (Huvelle, J.).[11]  And, since the

---

10      As defendants note: "The United States has since discontinued the CSRT process. Nevertheless, the CSRT process was the review mechanism in place at the time the MCA was enacted, and it was clearly the process Congress contemplated when crafting Section 2241(e)(2)."  Indiv. Defs.' Mot. to Dismiss at 6, n.5.

11      Similarly, another judge on our Court held that a district court's grant of a habeas corpus petition is not a "determin[ation] by the United States" that the petitioner has not "been properly detained as an enemy combatant" within Section 2241(e)(2) because under the statute's plain terms, "United States" refers to the Executive, and not the

"United States," through its 2004 and 2008 CSRTs, determined that plaintiff was as an

enemy combatant, MCA § 7 unequivocally bars plaintiff's claims against the United

States and its agents – including all individual defendants – and this Court lacks

subject-matter jurisdiction to hear plaintiff's claims.[12] Thus, even accepting as true

---

Judicial, branch. *In re Pet'rs Seeking Habeas Corpus Relief*, 700 F. Supp. 2d at 136-37
(Hogan, J.) ("[A] successful habeas petition would not provide a federal court with
jurisdiction to hear a Petitioner's 'other action,' in this case a damages action,"), *aff'd on
other grounds sub nom. Gul v. Obama*, 652 F.3d 12 (D.C. Cir. 2011) . Thus, plaintiff's
argument that "[c]ourts and judges are part of 'the United States' for purposes of § 2241,"
Pl.'s Opp'n to Indiv. Defs. at 11 – a statutory construction argument considered and
expressly denied in *In re Pet'rs Seeking Habeas Corpus Relief*, also fails. *See* 700 F.
Supp. 2d at 136-37*; see also* Indiv. Defs.' Mot. to Dismiss at 6-7; Indiv. Defs.' Reply in
Supp. or Mot. to Dismiss ("Indiv. Defs.' Reply"), Sept. at 13-14 [Dkt. #18].

12    Plaintiff also argues that even if his claims are encompassed by the MCA's
jurisdictional bar, the statute is unconstitutional as applied to him and therefore does not
prevent this Court from hearing his claims. Plaintiff offers multiple variations on the
same theme to support his argument, yet each fails in turn. First, he contends that the
Supreme Court invalidated Section 7 of the MCA – including both 28 U.S.C. §
2241(e)(1) (bar on detainee habeas claims) *and* § 2241(e)(2) (bar on "other" non-habeas
claims) – in *Boumediene v. Bush*, 553 U.S. 723, 792 (2008). Pl.'s Opp'n to Indiv. Defs.
at 15-17. Plaintiff's interpretation of the *Boumediene* holding is, to say the least,
strained, and it is wholly unconvincing. *See Boumediene*, 553 U.S. at 792 ("In view of
our holding we need not discuss the reach of the writ with respect to claims of unlawful
conditions of treatment or confinement."). Indeed, every court in our Circuit to consider
the issue has concluded that "*Boumediene* did not invalidate § 2241(e)(2)." *Al-Zahrani*,
684 F. Supp. 2d at 108-109; *see also, e.g., Al-Adahi v. Obama*, 596 F. Supp. 2d 111, 119
(D.D.C. 2009) (Kessler, J.); *Khadr v. Bush*, 587 F. Supp. 2d 225, 235-36 (D.D.C. 2008)
(Bates, J.); *In re Guantánamo Bay Detainee Litig.*, 577 F. Supp. 2d 314, 315-16 (D.D.C.
2008) (Hogan, J.); *In re Guantánamo Bay Detainee Litig.*, 570 F. Supp. 2d 13, 18 (D.D.C.
2008) (Urbina, J.). Moreover, to the extent plaintiff attempts to facially challenge the
MCA, I decline to address it here. *See Al-Zahrani*, 684 F. Supp. 2d at 110. Similarly,
plaintiff's argument – that because CSRTs are not constitutionally sufficient alternatives
to habeas corpus review, *Boumediene*, 553 U.S. at 733, using plaintiff's two CSRT
hearings as a basis for a jurisdictional bar is also unconstitutional, Opp'n to Indiv. Defs.

plaintiff's factual allegations and drawing all reasonable inferences in his favor,

plaintiff's claims against the individual defendants are barred by statute. Accordingly,

this Court has no subject-matter jurisdiction to consider them and defendants' Motion to

Dismiss is GRANTED as to the individual defendants.[13]

## III. Defendant U.S. Government (Counts V-XVII)

### A. This Court Also Lacks Jurisdiction to Hear Plaintiff's Claims Against the U.S. Government.

---

at 14-15 – also fails. *See Al-Zahrani*, 684 F. Supp. 2d at 110 ("The argument that because CSRT review has been found to be an inadequate substitute for habeas review, it is also inconclusive for 'purposes of application of MCA Section 7' is baseless."). His argument that MCA § 7 violates "traditional due process principles," *see* Opp'n to Indiv. Defs. at 17-24, is also meritless.

13    In any event, even if this Court had jurisdiction to consider plaintiff's claims (which it does not), qualified immunity would surely shield the individual defendants from suit for civil damages. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating that qualified immunity is "*immunity from suit* rather than a mere defense to liability") (emphasis in original). Here, because the rights plaintiff seeks to invoke – specifically his own Fourth, Fifth, and Thirteenth Amendment rights, *see* Pl.'s Opp'n to Indiv. Defs. at 25 – were not clearly established at the time of his detention, the individual defendants would be entitled to qualified immunity even if a *Bivens* action were implied. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district court may examine whether right was clearly established before asking whether the officer's conduct violated a constitutional right); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 533-35 (2004) (plurality opinion) (outlining due process requirements for a citizen-detainee while noting that tribunal proceedings may need to be tailored to avoid burden on the Executive Branch); Indiv. Defs.' Mot. to Dismiss at 22-25. Accordingly, because "[n]o reasonable government official would have been on notice . . . that plaintiff[] had any [constitutional] rights," *Al-Zahrani*, 684 F. Supp. 2d at 112, n.5, plaintiff's claims would – in any event – fail, and defendants' Motion to Dismiss would still be granted. For substantially the same reasons, plaintiff's § 1985 claim (Count XVIII) would also be dismissed. That is, even if plaintiff *could* state a § 1985 claim (which he cannot), defendants would *still* be entitled to qualified immunity. *See* Indiv. Defs.' Mot. to Dismiss at 32-36.

For the same reasons discussed above in Section II.A, the Military Commissions Act of 2006 bars plaintiff's claims against the Government. Because the MCA acts as a complete jurisdictional bar, this Court does not have subject-matter jurisdiction to hear plaintiff's ATS and FTCA claims and therefore the Government's Motion to Dismiss Counts V-XVII must also be GRANTED. Not surprisingly, perhaps, this result would be no different even if the MCA were not a jurisdictional bar. How so?

### B. Under Any Circumstances, This Court Lacks Jurisdiction to Hear Plaintiff's Alien Torts Statute and Federal Tort Claims Act Claims (Counts VI-XVII).

Even if the MCA did not bar plaintiff's claims (and it does), this Court still would not have jurisdiction to hear plaintiff's ATS and FTCA claims against the United States. The Government contends that the viability of plaintiff's claims against the United States boils down to the resolution of one question: whether the United States has waived sovereign immunity as to the instant claims. Gov't Mot. to Dismiss at 4. I agree that it has not been waived with respect to the ATS claims contained in Counts V-VII, and because the foreign-country exception bars plaintiff's FTCA claims arising in Afghanistan and Guantánamo (Claims VIII-XVII), the answer is unequivocally "no."

### 1. The United States Properly Substituted Itself As the Sole Defendant For Plaintiff's Alien Torts Statute Claims In Counts V-VII.

In Counts V-VII, plaintiff brings claims under the Alien Tort Statute, 28 U.S.C. § 1350, alleging that the named defendants violated his right to be free from "prolonged

16

arbitrary detention" (Count V, FAC ¶¶ 162-67) and his right to be free from "torture and cruel, inhuman, or degrading treatment" (Count VI, FAC ¶¶ 168-75). He also alleges violations of his rights under customary international law and the Third and Fourth Geneva Conventions. FAC ¶¶ 176-84. Because plaintiff improperly brings claims under the ATS, however, a preliminary examination of those claims is essential to determining this Court's jurisdiction to hear them.

Under the ATS, "district courts . . . have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. But under the Westfall Act,[14] the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, is the *exclusive* remedy in a suit against the United States for "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Indeed, "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is *precluded without regard to when the act or omission occurred*." *Id.* (emphasis added).

Here, because the defendants named in Counts V-VII were acting within the scope

_____

14      *See* Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (codified as amended at 28 U.S.C. §§ 2671, 2674, 2679).

of their employment,[15] and because neither Westfall Act exception applies in this case,[16]

plaintiff's exclusive remedy (to the extent any remedy exists at all) is against the United

States through the FTCA and *not* through the ATS. Accordingly, the United States is

---

15    Despite plaintiff's extensive arguments to the contrary, *see* Pl.'s Opp'n to United
States' Mot. to Dismiss ("Pl.'s Opp'n to Gov't"), Aug. 29, 2011, at 3-10 [Dkt. #16], there
is no real dispute about the named defendants acting within the scope of their
employment. Indeed, the conduct plaintiff alleges – conduct related to both interrogation
and detention, *see* FAC ¶ 170 ("[t]he acts described herein had . . . the purpose[] of
obtaining information or a confession from [p]laintiff") – falls well within defendants'
scope of employment. Accordingly, this Court is bound by the holdings in *Rasul v.
Myers*, 512 F.3d 644 (D.C. Cir. 2008) (*Rasul I*), *vacated by* 129 S. Ct. 763 (2008),
*reinstated in relevant part by* 563 F.3d 527 (D.C. Cir. 2009) (*Rasul II*), and *Ali v.
Rumsfeld*, 649 F.3d 762, 774 (D.C. Cir. 2011) (concluding, based on facts similar to those
here, that "defendants' alleged tortious conduct – 'the detention and interrogation of
suspected enemy combatants'– was 'incidental to [their] legitimate employment duties'
because it was 'the type of conduct the defendants were employed to engage in'")
(quoting *Rasul I*, 512 F.3d at 658-59), and the United States was properly substituted as
the defendant. This is true even where the "complaint alleges torture and abuse tied
exclusively to the plaintiffs' detention in a military prison and to the interrogations
conducted therein." *Rasul I*, 512 F.3d at 658 (internal citations and quotations omitted).
Ultimately, however, plaintiff's own words are most telling: he alleges that each named
defendant "act[ed] under the color of law as a United States official or federal officer."
FAC ¶¶ 165, 172, 179.

16    There are two Westfall Act exceptions for which the FTCA is *not* the exclusive
remedy for claims against federal employees acting within the scope of their employment:
claims brought "for a violation of the Constitution of the United States" and claims
brought "for a violation of a statute of the United States." 28 U.S.C. § 2679(b)(2).
Plaintiff's claims satisfy neither exception. Counts V-VII allege violations of the ATS,
not the Constitution. Moreover, the ATS "'is strictly a jurisdictional statute' that 'does
not confer rights nor does it impose obligations or duties that, if violated, would trigger
the Westfall Act's statutory exception.'" *Ali*, 649 F.3d at 777 (quoting *Rasul v.
Rumsfeld*, 414 F. Supp. 2d 26, 37-38 (D.D.C. 2006)). Finally, the customary
international law claims underlying plaintiff's claims also fall outside the two Westfall
Act exceptions. *See* Gov't Mot. to Dismiss at 8-9. Plaintiff's primary retort – that this
Court should disregard binding precedent and adopt as law Judge Edwards' *Ali* dissent,

18

properly substituted – by operation of law under 28 U.S.C. § 2679(d)(1)[17] – for the named

defendants in Counts V-VII.  As the sole defendant for Counts V-VII, however, those

Counts must face the same inquiry as Counts VIII-XVII: whether the United States has

waived sovereign immunity for claims for money damages under the ATS, or for the ATS

claims underlying plaintiff's FTCA claims.  Unfortunately for the plaintiff, the answer,

once again, is: "no."

> **2.    Because The United States Has Not Waived Sovereign Immunity With Respect to the ATS, This Court Does Not Have Jurisdiction To Hear Plaintiff's ATS Claims (Counts V-VII).**

It is well settled that a plaintiff cannot sue the United States without an express

waiver of sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994).[18]   But the

Supreme Court has made clear that the ATS does not itself create a cause of action, *Sosa*

*v. Alvarez-Machain*, 542 U.S. 692, 724 (2004), and our Circuit Court has held that the

ATS does not constitute an independent waiver of sovereign immunity, *Sanchez-Espinoza*

*v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985).   Moreover, the United States has not

waived sovereign immunity under the FTCA as it relates to the alleged conduct – such as

---

*see* Pl.'s Opp'n to Gov't at 10-14, is – to say the least – unavailing.

17     The Government's certification that the named defendants acted in the scope of their federal employment is sufficient to make a *prima facie* showing.   *See, e.g.*, *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006); *see also* Gov't Mot. to Dismiss at 5, n.5.

18     To the extent the United States has waived sovereign immunity for certain aspects of the FTCA, *see infra* Section III.B.3, those aspects are not implicated here.

violations of customary international law, the Third and Fourth Geneva Conventions, and other international standards, *see* FAC ¶¶ 164, 171, 178, 179 – underlying plaintiff's ATS claims. Indeed, Counts V-VII are not covered under the FTCA's waiver of sovereign immunity because they do not allege that "the United States would be liable to the claimant as a private person in accordance with the *law of the place*[19] where the act or omission occurred." 510 U.S. at 477 (emphasis added) (quoting 28 U.S.C. § 2846(b)). Of course, customary international law is not state law and therefore Counts V-VII are not covered under the FTCA's limited waiver.[20] Thus, since the United States has not waived its sovereign immunity with respect to the ATS claims contained in Counts V-VII, this Court does not have jurisdiction to hear them and the Government's Motion to Dismiss must be GRANTED as to Counts V-VII.

### 3. Because the Foreign Country Exception to the FTCA Bars Claims Arising in a Foreign Country, This Court Does Not Have

---

19 By interpreting "law of the place" as "the law of the State – the source of substantive liability under the FTCA," *Meyer*, 510 U.S. at 478, the Supreme Court has excluded federal claims from the FTCA waiver, *see Miree v. DeKalb County*, 433 U.S. 25, 29 n.4 (1977).

20 As the Seventh Circuit has persuasively described, "[i]f the plaintiff's claim is not cognizable under state tort law, it does not fall within the sovereign's waiver of immunity and must be dismissed." *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009). For the same reason, Counts X (cruel, inhuman, and degrading treatment) and XVI (prolonged arbitrary detention), FAC ¶¶ 206, 255, must be dismissed because neither alleges torts actionable against private individuals under the laws of Washington, D.C. Moreover, plaintiff's convoluted claims that the law of Washington, D.C., somehow incorporates customary international law and that the ATS is thus included in the FTCA's waiver of sovereign immunity, *see* Pl.'s Opp'n to Gov't at 15-19, is both incredible and unsupported by law. *See also* Gov't Reply at 10.

## Jurisdiction To Hear Counts VIII-XVII (Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*).[21]

In Counts VIII-XVII, plaintiff brings nine state-tort claims against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* All of those claims, however, are barred by the foreign-country exception to the FTCA.

Although the FTCA constitutes a limited waiver of the United States' sovereign immunity, *United States v. Orleans*, 425 U.S. 807, 813 (1976), it also contains several exceptions to its waiver. Specifically excluded from the FTCA waiver of sovereign immunity is "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k).

It is beyond dispute that the substance of plaintiff's allegations arose outside of the United States in Afghanistan and in Cuba. Tellingly, plaintiff does not quarrel with this Court's lack of subject-matter jurisdiction to hear his Afghanistan-related claims. He does, however, challenge whether the foreign-country exception bars his claims arising out of conduct which took place in Guantánamo.

Not surprisingly, plaintiff once again suggests that Guantánamo is a United States "sovereign for purposes of § 2680(k)." Pl.'s Opp'n to Gov't at 20. And once again, his argument fails. *See Boumediene*, 553 U.S. at 754 ("We therefore do not question the Government's position that Cuba, not the United States, maintains sovereignty, in the

---

21 Because the United States was substituted as the sole defendant for Counts V-VII, those Counts are subject to the same foreign-country exception analysis as Counts VIII-XVII, and are also barred for that reason.

legal and technical sense of the term, over Guantanamo Bay."). Indeed, Guantánamo fits
well within the Supreme Court's "foreign country" definition for purposes of the FTCA:
it is a "territory subject to the sovereignty of another nation." *United States v. Spelar*,
338 U.S. 217, 219 (1949).[22]   And as the Government points out, other courts – in our
Circuit and others – have *uniformly* dismissed FTCA claims arising in Guantánamo for
precisely this reason. *See, e.g., Al-Zahrani*, 684 F. Supp. 2d at 117-19 (relying on *Spelar*
to bar FTCA claims arising in Guantánamo); *see also* Def. United States' Reply in Supp.
of Mot. to Dismiss ("Gov't Reply"), Sept. 26, 2011 at 12 [Dkt. #19] (citing other
persuasive authority).   As a result, this Court clearly lacks jurisdiction to hear plaintiff's
FTCA claims[23] and the Government's Motion to Dismiss must also be GRANTED with
respect to Counts VIII-XVII.

## CONCLUSION

War, by its very nature, victimizes many of those caught in its wake.   Innocent

---

22    Just as the Supreme Court looked to the lease between the U.S. and Great Britain
to determine British sovereignty in *Spelar*, it also looked to the lease between the U.S.
and Cuba to determine Cuban sovereignty in Guantánamo. *Compare Spelar*, 338 U.S. at
218-19 *with Rasul*, 542 U.S. at 471.   In both cases, the bases remained subject to the
lessor's sovereignty because the lease did not transfer sovereignty to the United States.
*See* 338 U.S. at 218-19; 542 U.S. at 471; *see also* Gov't Mot. to Dismiss at 12.

23    To the extent plaintiff alleges that conduct in Afghanistan and Cuba was caused by
acts or omissions of individuals in Washington, D.C., and thus avoids the foreign-country
exception, those arguments are squarely foreclosed by *Sosa*, 542 U.S. at 711-12
(repudiating the "headquarters doctrine" and emphasizing that "the FTCA's foreign
country exception bars all claims based on any injury suffered in a foreign country,
*regardless of where the tortious act or omission occurred*") (emphasis added).

civilians are invariably killed, and sometimes even mistakenly imprisoned. Our legal system was never designed to provide a remedy in our Courts for these inevitable tragedies, especially in a conflict like this where terrorists cunningly morph into their surroundings. Indeed, the Congress has specifically barred the Judicial Branch from reviewing "any aspect of the detention . . . treatment . . . or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," 28 U.S.C. § 2241(e)(2). For this Court to circumvent such a clear directive from our Legislative Branch would be an utter disregard of the limitations of our judicial power. And thus, for all of the foregoing reasons, the defendants' Motions to Dismiss [Dkt. ## 13, 14] must be GRANTED. An Order consistent with this decision accompanies this Opinion.

RICHARD J. LEON
United States District Judge